Gayle DuWayne KINDRED,
Petitioner–Appellee,

v.

Phillip SPEARS, Warden and United
States Parole Commission,
Respondents–Appellants.

No. 89–1355.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1990.

Sharon Gervason, U.S. Parole Com'n, Chevy Chase, Md., Marvin Collins, U.S. Atty., Wayne Hughes, Asst. U.S. Atty., Fort Worth, Tex., for respondents-appellants.

Melvin J. Klein, Melvin J. Klein & Assoc., Dallas, Tex., for petitioner-appellee.

Before GEE, JONES, and SMITH, Circuit Judges:

GEE, Circuit Judge:

This appeal concerns the contours of due process protection afforded a prisoner in his dealings with the Parole Commission. Succinctly, the question before us today is whether or not the Parole Commission is bound to provide contemporaneous reasons for its decisions. We hold that the Federal Parole Statute mandates such a contemporaneous reasoning requirement and that, therefore, the decision of the district court must be affirmed.

### Facts and Disposition Below

In 1984, Kindred was convicted of conspiracy to transport currency, transportation of stolen currency ($700,000 (Canadian)) and failure to declare $5,000. Kindred had acted as a remote lookout for his cohorts as they robbed two couriers, took them to a rural area, bound them with chains and taped their eyes and mouths. For his part in the crime, Kindred received

a sentence of 30 years. At his initial parole hearing in 1985 a panel of examiners rated the severity of his offense as category six and assigned him the maximum "salient factor" score of 10 (affording him a very good parole prognosis). *See* 28 C.F.R. section 2.20; 18 U.S.C. section 4205(b)(2). The parole examiners' calculations afforded Kindred a 40–52 month window for initial release. The panel recommended that Kindred be required to serve the 52 month maximum.

Upon administrative review, the Regional Parole Commissioner recommended that Kindred's offense severity level be upgraded to category seven, in view of his treatment of his victims (binding and gagging). Pursuant to the Commission's regulations, the case went before the National Commissioners. The Regional Commissioner pressed for an upgrade on three grounds; (i) the use of chains in detaining the victims; (ii) the fact that Kindred had once been a law enforcement officer and (iii) Kindred's admission to a prior unprosecuted offense.[1]

The National Commissioners agreed to the upgrade, thereby extending Kindred's parole window to the 52–80 month range. The Commissioners ordered Kindred to serve the maximum 80 month period. In its decision to upgrade, the National Commissioners relied only on the use of chains and expressly concluded that "a decision outside the guidelines ... is not found warranted." The National Commissioners, therefore, did not expressly rely on the prior unprosecuted offense in reaching their decision. Kindred unsuccessfully appealed the Commission's decision to the National Appellate Board.

In 1987, Kindred obtained his statutorily mandated interim parole review. A panel, persuaded that Kindred had intended only to slow his victims' escape and not to permanently bind them, determined that his offense was mischaracterized and should be downgraded to category six (40–52 months). The panel, however, opted to "go outside" the category six guidelines and recommended the same 80 month time frame for parole as Kindred had earned under the more onerous category seven threshold. This 80 months was to be mitigated somewhat by a 7 month deduction for superior program achievement. The panel stated no reason for exceeding the category six guidelines. The Regional Commissioner adopted the panel's determination.

Kindred appealed once again to the National Appeals Board. The Board affirmed the decision but for the first time expressly cited the unprosecuted offense as the reason for exceeding category six.

Kindred applied for a writ of habeas corpus, complaining that the Commission's decision to exceed the published guidelines violated due process. A magistrate recommended that the writ be granted because, in recommending the self-same 80 month period of incarceration, (although 28 months above the category six limit) the Commission had penalized Kindred for his successful attack on the severity categorization. The magistrate found the Commission's decision to be violative of the due process clause of the Fifth Amendment. The district court adopted the magistrate's recommendation and ordered that the Commission reevaluate Kindred's parole possibilities with the injunction that, should it exceed category six, it could do so only on the basis of some new event or conduct occurring after the original parole determination of 1985. The Government now appeals to us, asserting error in the court's order disallowing an upgrade absent reliance on post–1985 events.

### Discussion

 The Parole Commission enjoys absolute suzerainty over matters of parole. *See* 18 U.S.C. section 4203 (conferring power on Commission to establish guidelines to aid in the exercise of its powers); *Maddox v. United States Parole Comm'n,* 821 F.2d 997, 999 (5th Cir.1987). In its calculations

---

**1.** Kindred confessed to throwing gasoline in the face of an armed robbery victim, striking the victim with a club and kidnapping the victim. He left the victim bound and secured to a tree in a rural area. Kindred was not prosecuted for this offense.

on parole questions, the Commission may consider any information not constitutionally barred. This broad decisional power encompasses authority to consider unprosecuted criminal activity. *Maddox*, 821 F.2d at 999. Moreover, and exceptionally, the Commission may for "good cause" go outside its own guidelines provided that "the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon." 18 U.S.C. section 4206(c). The question before us today is whether the Commission's tardy justification for the upgrade violates the standard set forth in section 4206(c) or the due process guarantee of the Fifth Amendment.

In attempting to resolve this question, the legal issues reduce to:

I. The proper application of the presumption of vindictiveness enunciated in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

II. Whether or not the district court made a finding of vindictiveness on the part of the Parole Commission.

III. The due process implications of the Parole Commission's failure to follow its own internal procedures.

I. *Pearce and the Presumption of Vindictiveness.*

█ The basic theorem of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) holds that, where a defendant has successfully challenged his conviction and is resentenced after a retrial, a sentencing judge may not impose a harsher sentence than was first imposed unless the new sentence is based on events subsequent to the first trial. Imposition of a harsher sentence by the original judge triggers a presumption of vindictiveness that acts as an aid to defendants who would otherwise have to shoulder a heavy burden of proof. *Marshall v. Lansing*, 839 F.2d 933 (3d Cir.1988) would extend the notion of institutional vindictiveness into the area of parole decisions.

The gist of the government's argument to us is that the district court applied the *Pearce* presumption to the instant case and

that it erred by doing so. Section II of our opinion deals with whether or not the district court did apply *Pearce*. For the moment, however, we shall assume *arguendo* that it did so and move directly to the question of whether *Pearce* governs this case.

The government contends that a defendant must demonstrate the existence of two factual predicates to earn the *Pearce* presumption; (i) reversal by a higher tribunal and (ii) imposition of a harsher sentence below. Essentially, the government argues that *Pearce* is a brightline test designed to assuage a chilling effect on appeals or collateral attacks on sentences by defendants. To this end, the government puts forward the notion that Kindred fails the second prong of the *Pearce* test because his sentence on second reconsideration was more lenient. Kindred makes no response to this argument. We find the government's position here unpersuasive. The contention conceals an intellectual sleight of hand. Although, de jure, Kindred's sentence looks less harsh, (recategorization down and 7 month award) de facto, Kindred is being made to serve the category seven maximum for an offense that merits only category six severity.

The government is on surer ground in its claim that Kindred fails the first prong of the *Pearce* test because it was the Commission itself and not any other, higher, tribunal that changed Kindred's sentence. Thus, according to the government, the crucial event from which vindicativeness could be imputed was lacking. The gravamen of Kindred's opposing claim for *Pearce* is that, rather than a reversal by a higher tribunal being the trigger event to impute vindictiveness, presence of a motive for self-vindication in the original sentencing authority can fire vindictiveness.

█ The case law does not lend support to Kindred's argument. Prudentially, the Supreme Court's purpose in fashioning the presumption in *Pearce* was to protect a defendant's right to appeal his conviction against the chill of a vindictive tribunal. 395 U.S. at 724–25, 89 S.Ct. at 2080. The

Court captured the notion of vindictiveness in the discrete occurrence of a reversal on appeal prompting the lower court to punish the defendant. Vindictiveness does not exist in a vacuum. As a matter of logic, vindictiveness becomes a danger only where an event prods the sentencing court into a posture of self-vindication. Absent a triggering event, the court will not presume vindictiveness. *See Texas v. McCullough,* 475 U.S. 134, 139, 106 S.Ct. 976, 978–79, 89 L.Ed.2d 104 (1986). Reversal on appeal or an order to the lower tribunal to grant a new hearing (*Marshall*) constitutes a salient triggering event. In the instant case nothing occurred to trigger the presumption of vindictiveness. As the government states, far from being reversed on appeal, or by an order to grant a new hearing, the case came back to the Commission by the mechanical operation of law. Kindred's second appearance before the Commission was not in the role of the errant schoolboy who dared challenge his elder's wisdom but rather that of a passive cog in a statutory machine. Consequently, Kindred's argument that a motivation for self-vindication without anything to excite it can raise the *Pearce* presumption of vindictiveness is mistaken both as a matter of logic and of law.

## II. *Did the district court make a finding of vindictiveness?*

The government argues that the district court applied the *Pearce* presumption of vindictiveness because it applied the rule in that case without making a finding of fact regarding vindictiveness. Consequently, in this view, there exists no finding of fact to which we as a reviewing court owe deference. The government points out that application of the presumption by the district court is a ruling of law reviewable de novo on appeal. Because *Pearce* bears no application to the instant case, the argument continues, the district court's decision rises to abuse of discretion. Moreover, the government reasons, no objective evidence exists to support a finding of vindictiveness.

Kindred retorts that the district court did, indeed, find that the Parole Commis-

sion's decision was vindictive. The court found vindictiveness in the post hoc reasoning of the Parole Commission relying on evidence not articulated until the appellate level to shore up the result that it reached in its first incorrect decision. Kindred relies chiefly on *Marshall v. Lansing,* 839 F.2d 933 (3d Cir.1988), for his contention that the district court relied on "substantial evidence" rather than on a presumption in finding the Parole Commission's action vindictive. In *Marshall,* the Parole Commission ignored Marshall's disciplinary infraction in his first parole hearing. Marshall successfully attacked the decision in the district court, gaining an order to the Commission to reduce the severity of his offense. The Commission then tried to subvert the court's decision by using the known prior infraction to reinflate the severity of the offense to its original level. The Third Circuit held that the Commission's action violated due process because the Commission had known of the infraction and had not added it to its guideline tally until after Marshall had prevailed in the district court. Kindred argues strenuously that the Third Circuit arrived at its decision, not by attaching a *Pearce* presumption, but rather by citing the *Pearce* scenario as an example of conduct impermissible under the due process imperative.

Kindred presents the decision of the district court in the same light—i.e., that the court did not employ a presumption, rather, that it arrived at its conclusion of vindictiveness on the basis of the facts before it. The district court stated:

> The parole authorities have added an additional 28 months to the time he must serve. It also stretches one's credulity that in going outside the guidelines you would come up with 80 months, which was the first release date under Category Seven. It appears that the parole authorities had made their decision that 80 months was the release date. They had to go outside the guidelines to arrive at that result so they used a post [hoc] justification reason to arrive at exactly the same result.

Kindred's reading of *Marshall* is arguably correct, even though that decision is conventionally treated as having extended the *Pearce* presumption into the parole arena. Even if *Marshall* did revolve around the application of the *Pearce* presumption, however, it remains incontrovertibly the business of the district court to find facts and to apply to those facts the correct legal rules. In other words, the district court is not limited to applying presumptions in arriving at conclusions of vindictiveness. In the instant case, the district court's treatment of the facts suggests that it implicitly found vindictiveness. (*See* above). The court's discussion of the Commission's conduct reflects a well fleshed-out consideration of the facts rather than the application of a bare bones presumption. In any case, we need not resolve the question of whether the district court found vindictiveness in view of our holding regarding the Commission's failure to follow its own procedures.

III. *The due process implications of the Commission's failure to follow its own internal procedures.*

The government next attacks the propriety of the holding in *Marshall* that parole decisions must adhere to the due process standard. The government relies on *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), for the proposition that there is no constitutional right to parole. The Supreme Court in *Greenholtz* did, however, deduce a constitutionally protectible liberty interest in release from a Nebraska statute providing in mandatory language for parole. 442 U.S. at 11–12, 99 S.Ct. at 2105–06. In *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), the Supreme Court, viewing that case as entirely consistent with *Greenholtz,* expressly recognized a protectible liberty interest in parole where the governing statute encapsulates parole in mandatory release language. 482 U.S. at 376, 107 S.Ct. at 2419–20. The statute governing Kindred's case is the Federal Parole Statute, 18 U.S.C. § 4206(a); and its mandatory release language mirrors the language in the Montana statute construed by the Su-

preme Court in *Allen.* Section 4206(a) provides that a prisoner meeting the Commission's guidelines "shall be released". Consequently, *Allen* controls this case and due process must govern Kindred's parole decision.

The government suggests that even if *Allen* applies the protection that it affords Kindred is in the nature of minimal procedural protections and that, therefore, Kindred is entitled to no more than a hearing and a statement of reasons why he does not qualify for release. The government alleges that the district court engaged in substantive due process analysis in scrutinizing the decision of the Commission and that, therefore, it substituted its discretion for that of the Commission, where it was properly and broadly vested.

The Commission's discretion is not unfettered. The Supreme Court in *Allen* was adamant that, although the Parole Board has discretion (in the sense of power to use its judgment in applying the standards set it), it is "not incompatible with the existence of a liberty interest in parole release when release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist." 482 U.S. at 376, 107 S.Ct. at 2419 (emphasis in original). Further, the *Allen* Court reiterated its *Greenholtz* holding that though release decisions are "necessarily subjective and predictive" and though the Board's discretion regarding them is "very broad", the presence of mandatory release language creates a constitutionally protectible liberty interest in parole. 482 U.S. at 381, 107 S.Ct. at 2422. This liberty interest moors the Commission to certain due process standards. The parties take opposing views of the content of those standards.

■ The government, citing *Greenholtz,* argues for only a minimal due process threshold to apply to Commission decisions. Kindred contends that due process dictates that if the Commission goes outside the guidelines, it must *simultaneously* state the reasons for so doing. Both arguments carry a measure of truth. We conclude that the quantum of process due is that which is minimally required by the Consti-

tution unless, as here, the government has affirmatively agreed to bind itself to a higher level of process. The argument for a higher level of process rests on the twin balustrades of the mandatory language of the parole statute and the regulations governing the Parole Commission.

The regulations create a requirement that a decision outside the guidelines be justified by a statement of the evidence used and the reasoning applied in reaching the conclusion. 28 C.F.R. section 2.13(d). *See, also,* Commission's *Procedures* at 2.20–05 (April 1987). The broad discretion inhering in the Commission is further delimited by requirements that such decisions be only for good cause and supported by clearly articulated reasons. 18 U.S.C. sections 4206(b), 4206(c). *Accord Stroud v. United States Parole Commission,* 668 F.2d 843 (5th Cir.1982); *Rifai v. U.S. Parole Commission,* 586 F.2d 695 (9th Cir. 1978); *Garcia v. Neagle,* 660 F.2d 983 (5th Cir.1981), *cert. denied* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). Furthermore and crucially, the *Marshall* court held that due process demands that an agency follow its own regulations and procedures. 839 F.2d 933, 943 (3d Cir.1988), citing, *inter alia, United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Frisby v. United States Department of Housing and Urban Development,* 755 F.2d 1052 (3d Cir.1985). Finally, *Marshall* explicitly creates a requirement of contemporaneous reasoning: "[T]he case law is clear that the body imposing sanctions must explain its decision to impose an increased penalty contemporaneous with that decision." 839 F.2d 933, 948 n. 20.

We do not today reach the issue of whether the Constitution demands an equal complement of process to that the statute requires. Our decision, is, therefore, grounded in our reading of the Federal Parole Statute. The requirement of contemporaneous reasoning is the necessary corollary of the "good cause" and "particularity" demands of the statute. We do not find it overly intrusive to hold the Commission to its statutory mandate of providing clearly articulated reasons nor to infer a requirement that that reasoning be contem-

poraneous. So much flows easily from our reading of the statute.

For the above reasons, the decision of the district court is

AFFIRMED.