United States Court of Appeals,

Fifth Circuit.

No. 92-3525.

Danny WELCH, Plaintiff-Appellant,

v.

Glenn THOMPSON, et al., Defendants-Appellees.

May 13, 1994.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

Today we decide whether the Louisiana statute establishing the state's prison work release program creates a protected liberty interest for eligible prisoners, the deprivation of which cannot be sustained without due process. The district court held that it does not. We affirm.

## I. History of the Case

The plaintiff, Danny Welch, is a former prisoner of the Louisiana Department of Public Safety and Corrections ("the Department"). Welch brought an action under 42 U.S.C. § 1983 against several Department officials at the Louisiana State Penitentiary ("LSP") where he was incarcerated until his release in October of 1990.[1] Welch alleged that he was denied due process and equal protection when he was excluded from the prison's work release program during the final six months of his term. Welch

---

[1]He also named as a defendant former Governor Buddy Roemer.

1

sought both punitive and compensatory damages and requested injunctive and declaratory relief. In addition, he asked the federal court to exercise pendent jurisdiction over his state law claims.

The magistrate judge to whom the case was assigned entertained both parties's motions for summary judgment. He recommended that Welch's suit be dismissed with prejudice on the federal claims and without prejudice on the state law claims. Specifically, the magistrate judge held that the Louisiana statute establishing the work release program did not create a liberty interest and, therefore, Welch was not entitled to, nor had he been denied, due process. The district court adopted the magistrate judge's recommendation and granted the defendants's motion for summary judgment. Welch appeals that judgment.[2]

During the course of this appeal, the parties were instructed to file supplemental briefs addressing the following issue:

> Whether the Louisiana work release provisions create a protected liberty interest in light of *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); and *Kindred v. Spears,* 894 F.2d 1477 (5th Cir.1990).

## II. Facts

The facts of this case are not in dispute. Welch received a 25-year sentence after being convicted of attempted aggravated rape. Although his full-term date of release would have been October 8, 2001, he was released with good-time credit on October

---

[2]The district court denied Welch leave to proceed *in forma pauperis,* this Court reversed.

2, 1990.  On March 8 and March 30 of that year, Welch requested

placement in Louisiana's work release program.[3]  On April 6, 1990,

Classification Officer Glenn Thompson, one of the defendants,

denied the request on the ground that prisoners convicted of

attempted aggravated rape were not eligible to participate in the

work release program.  Thompson denied Welch's second request as

well, citing the same reason.[4]

To exhaust his administrative remedies, Welch took his

complaint to the "second step" and reiterated his request.  The

second step response, prepared by Warden John Wittey and Director

of Classification Joseph Lee, stated that "a recently implemented

procedure at LSP will routinely consider all persons for work

release six (6) months prior to release.  Therefore, your request

for remedy is granted in part."

---

[3]La.R.S. 15:1111 (West 1992) established the state's work
release program.  The statute reads, in part:

> A. The Louisiana Department of Institutions is hereby
> authorized to establish and administer a work release
> program for inmates of any institution under the
> jurisdiction of the department.

[4]In his denial of Welch's request, Thompson cited Department
Regulation 30-14(a) (Jan. 1, 1979) which states, in part
(emphasis added):

> 6. Selection Criteria:  * * *
>
> > D. (1) Inmates convicted of the following offenses
> > are not eligible:
> >
> > > (a) Aggravated Arson
> > >
> > > (b) Aggravated Kidnapping
> > >
> > > (c) Aggravated or *Attempted Aggravated Rape.*

The recently implemented procedure to which the letter alluded reflected a policy change at LSP. In a memorandum dated April 13, 1990, the Assistant Secretary of the Department explained to all Department wardens that an increase in the number of available beds for inmates on work release required a major policy shift. From the date of the memorandum forward, the Department would

> change [its] philosophy from one of identifying the most appropriate, suitable inmates to one of "they'll be on the streets in six months anyway".

Accordingly, the memorandum overruled the previous categories of ineligibility and replaced them with an across-the-board eligibility for all prisoners in the last seven months of their terms. For Welch, it meant that attempted aggravated rape convicts were no longer barred from participating in the work release program.

Welch nonetheless remained unsatisfied. His new-found "eligibility" did not translate into an approval for one of the available work release beds. Welch appealed to the Secretary of the Department. In response, the Secretary explained that being *considered* for work release is not the same as being *approved* for work release. Welch again was denied work release but told that he would remain under active consideration.[5] Welch was released without being placed on work release.

### III. Discussion

We review a grant of summary judgment *de novo.* In so doing,

---

[5]Welch now complains that he was never seriously considered. He asserts that no prison official ever interviewed or communicated with him.

4

we apply the same standard applied by the district court.[6]  A grant of summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[7]  Welch raises no factual issues.

Welch alleges that he was deprived of his right to participate in the Department's work release program without due process of law.  The Department contends that the Due Process Clause is not implicated because no federal or state law creates a right to participate in a work release program.  Because our exploration of La.R.S. 15:1111 locates no such liberty interest, we side with the Department.

We look to federal constitutional law to determine whether La.R.S. 15:1111 creates a legitimate claim or entitlement protected by the Due Process Clause of the Fourteenth Amendment.[8]  Moreover, the due process analysis is the same in measuring the Louisiana statute against the strictures of the Fourteenth Amendment as it would be under the Fifth Amendment.[9]  We analyze procedural due process questions using a two-step inquiry:  First, we determine whether the state has deprived a person of a liberty or property interest;  if there has been such a deprivation, we must determine

---

[6]*Evans v. City of Marlin, Tex.,* 986 F.2d 104, 107 (5th Cir.1993).

[7]Fed.R.Civ.P. 56(c).

[8]*See Memphis Light Gas & Water Div. of Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39 (1978).

[9]*See Burstein v. State Bar of California,* 693 F.2d 511, 516 n. 8 (5th Cir.1982).

5

whether the procedures relative to that deprivation were constitutionally sufficient.[10]

In the prison context, a state creates a protected liberty interest when it limits official discretion in approving or denying an inmate's request or eligibility for a prison program.[11] If the prison officials have wide authority and discretion, usually no liberty interest is at stake. As a guidepost, we look for an "if-then" relationship; i.e., if certain criteria are met, then the outcome must follow.[12] This relationship will be reflected by "particularized standards or criteria that guide the State's decisionmakers".[13]

This case turns on whether Louisiana created a liberty interest when it established the work release program. We start with the Supreme Court's important analytical observation in *Kentucky v. Thompson:*

> The fact that certain state-created liberty interests have been found to be entitled to due process protection, while others have not, is not the result of this Court's judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and

---

[10]*Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506, 514 (1989).

[11]*See Olin v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813, 823 (1983).

[12]The outcome must follow when the language is mandatory. The term "shall" is the paradigmatic mandatory word. *See Board of Pardons v. Allen,* 482 U.S. 369, 377, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303, 312 (1987).

[13]*Id.* (internal quotations omitted).

regulations.[14]

As a result, the cases addressing this issue vary widely because they turn on the language of the particular statute or regulation in question.[15]

La.R.S. 15:1111, the Louisiana statute establishing the work release program, provides in part:

> B. The Department shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program, subject to the provisions of this Part.
>
> * * * * * *
>
> I. Notwithstanding the provisions of Subsection B above or any other law to the contrary, any inmate who had been convicted of ... attempted aggravated rape ... shall be prohibited from participation in the work release program except during the last six months of their terms.[16]

The Department adopted several regulations carrying out this statute. Regulation 30-14(A), the basis for the Department's initial denial of Welch's request for work release, dictated that inmates convicted of attempted aggravated rape would not be

---

[14]490 U.S. at 461, 109 S.Ct. at 1908-09, 104 L.Ed.2d at 515.

[15]*See, e.g., Brennan v. Cunningham,* 813 F.2d 1, 8 (1st Cir.1987) (state law created liberty interest in halfway house work-release program); *Mahfouz v. Lockhart,* 826 F.2d 791, 793-94 (8th Cir.1987) (no liberty interest in work release under regulations); *Whitehorn v. Harrelson,* 758 F.2d 1416, 1422 (11th Cir.1985) (disputed issue of fact on whether state regulations created liberty interest in work release program); *Winsett v. McGinnes,* 617 F.2d 996, 1006-07 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) (state law created liberty interest in work release program).

[16]La.Rev.Stat.Ann. 15:1111(B) and (I) (West 1992).

eligible for work release, even in the last six months of their terms. In addition, Department Regulation 30-14(A) explicitly granted the Department wide discretion in selecting inmates for work release.

As mentioned, the Department issued a memorandum overruling that regulation on April 13, 1990, one month after Welch first requested placement in the program. This superseding memorandum directed that all inmates within seven months of their release would be considered unless **"blatantly ineligible"** (emphasis in original). Although this memorandum did not define "blatantly ineligible", it provided some examples: prisoners with poor records, those convicted of heinous crimes, and those likely to evoke an adverse public reaction if placed in a community rehabilitation center. In sum, prisoners convicted of attempted aggravated rape were no longer automatically excluded from eligibility to participate in work release as of April 1990.

The central issue, however, does not involve the regulation or the superseding memorandum; it concerns the statute itself. Welch argues that the statute establishing the work release program gives prison officials no discretion in determining who may participate. He argues that the statute allows the Department to establish rules for the internal operation of the program. Those officials may not, however, establish selection criteria for eligibility. Hence, he asserts, prisoners fitting within the statute's criteria must be allowed to participate.

In particular, Welch points to Subsection (I), which prohibits

8

persons convicted of attempted aggravated rape from being eligible for work release except for the last six months of the sentence. He argues that this provision of the statute limits the officials's discretion to deny a prisoner work release during the last six months of an inmate's term. Not surprisingly, he reads this provision as a mandatory directive; i.e., persons convicted of attempted aggravated rape "shall" not be excluded. Hence, he urges, La.R.S. 15:1111 created a liberty interest in the work release program during the last six months of a prisoner's term.

The Department argues that La.R.S. 15:1111 does not limit the discretion of the officials in determining who is eligible to participate in the work release program. The statute, it argues, contains no "specific directives to the decision maker" which bind the outcome, unless certain specified criteria are not met.[17] The Department looks to a different provision of the statute as support for its position. Subsection (B) states that the Department "shall determine those inmates who may participate in the release program". This statement, it argues, gives the Department abundant latitude; no mandatory language binds their decisions. The Department distinguishes between the outer boundaries of who *may* permissibly participate and mandatory dictates of who *must* be allowed to participate. This provision secures only the former; a liberty interest, however, would be created only with the latter.

We asked the parties to brief this issue in the light of three

---

[17]*Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909-10, 104 L.Ed.2d at 516.

cases: *Kentucky Dept. of Corrections v. Thompson*[18], *Board of Pardons v. Allen*[19], and *Kindred v. Spears*[20]. Before passing on the statute in this case, it is helpful to examine the decisions in these three precedents.

In *Thompson,* the Supreme Court addressed whether Kentucky prison regulations gave inmates a protected liberty interest in receiving visitors.[21] The regulations at issue in *Thompson* are similar to the law at issue in the present matter. The regulations stated that, "administrative staff reserves the right to allow or disallow visits".[22] Yet, the regulations aspired to meet the policy of respecting the right of inmates to receive visitors.[23] Nonetheless, in the light of the discretion inherent in the "reserves the right" provision, the Court concluded that "[t]his language is not mandatory."[24] The *Thompson* Court held that, while the Kentucky regulations provide "certain "substantive predicates' to the decisionmaker", they do not require that a particular result be reached even if the substantive predicates are met.[25] In sum,

---

[18]490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

[19]482 U.S. 396, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

[20]894 F.2d 1477 (5th Cir.1990).

[21]490 U.S. at 455, 109 S.Ct. at 1906, 104 L.Ed.2d at 512.

[22]*Id.* at 464, 109 S.Ct. at 1910-11, 104 L.Ed.2d at 517.

[23]*Id.*

[24]*Id.*

[25]*Id.* The Court explained that the discretion built into the language of the regulations allowed for no inmate to form an "objective expectation" that a particular visitor will be

the Court held that the regulations did not create a liberty interest protected by the due process clause of the Fourteenth Amendment.[26]

In *Board of Pardons v. Allen,* the Supreme Court evaluated a Montana parole statute. The Court stated that no meaningful distinction existed between the Montana statute and the parole statute that had been found to have created a liberty interest in *Greenholtz v. Nebraska Penal Inmates.*[27] The Court in *Allen* held that the parole law created a liberty interest because it dictated that inmates "shall" be released when certain criteria are met.[28] The mandatory language in the statute created a "presumption that parole release will be granted when the designated findings are

---

allowed, even if that individual falls within one of the described categories. *Id.* at 464-65, 109 S.Ct. at 1910-11, 104 L.Ed.2d at 517-18.

[26]*Id.* at 463-64, 109 S.Ct. at 1910, 104 L.Ed.2d at 517.

[27]442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Montana Statute provided, in part:

> Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release on parole ... any person confined in the Montana state prison or the women's correction center ... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]
>
> (2) A parole *shall* be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Mont.Code Ann. § 46-23-201 (1985) (emphasis added).

[28]*Allen,* 482 U.S. at 377-78, 107 S.Ct. at 2420, 96 L.Ed.2d at 312.

11

made".[29]

In *Spears,* this Court held that the Federal Parole Statute[30] binds the Parole Commission to give reasons for its decisions.[31] In analyzing the due process implications of a prisoner's right to reasons for the Commission's decisions, we reiterated that a protected liberty interest in parole exists "where the government encapsulates parole in mandatory release language".[32]

We first concluded in the *Spears* case that the federal parole statute "mirrors the Montana statute construed by the Supreme Court in *Allen*".[33] The statute dictates that a prisoner meeting the criteria set forth "shall be released".[34] This mandatory language plainly created a liberty interest.

Next, we determined that the quantum of process due exceeded that which is minimally required by the Constitution.[35] The government, through the statute and its governing regulations, had "affirmatively agreed to bind itself to a higher level of process".[36] The regulations explicitly required that a decision denying parole be good cause and clearly articulated. Accordingly,

---

[29]*Id.*

[30]18 U.S.C. § 4206(a).

[31]894 F.2d at 1477.

[32]*Id.* at 1481 (citations omitted).

[33]*Id.*

[34]*Id.*

[35]*Id.* at 1482.

[36]*Id.*

12

we held that the board was left with little discretion.[37]

These cases focus the law on the problem but still leave open the determinative question in the case at hand: Does La.R.S. 15:1111 contain mandatory language that a prisoner shall be eligible and approved for work release if certain criteria are met? We hold that it does not.

Although at first blush, there appears to be an internal contradiction between Subsections (B) and (I), a consistent reading of the statute dissipates that reaction. Under Subsection (B), the Department determines who may participate in the work release program. This provision appears to grant the Department discretion which, in turn, cuts against finding a liberty interest. Subsection (I), however, appears to grant, as a matter of right, the eligibility to participate in the work release program to all inmates during the last six months of their terms, regardless of their underlying convictions. This Subsection, then, cuts in favor of finding a liberty interest.

Significantly, La.R.S. 15:1111 does not mandate who shall participate in work release nor spell out the specific criteria to be applied to the selection process. Instead, it mandates that the Department shall determine which inmates are eligible.[38] Subsection

---

[37]*Id.*

[38]"It should be obvious that the mandatory language requirement is not an invitation to courts to search regulations for any imperative that might be found. The search is for relevant mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question." *Thompson,* 490 U.S. at 464, 109 S.Ct. at

(I) grants eligibility to all prisoners in the last six months of their terms. Hence, if it limits discretion in any way, it is only to dictate the outer limits as to eligibility. But eligibility by itself is not a liberty interest. A liberty interest is more than "an abstract need or desire".[39] It must be based on more than "a unilateral hope".[40] The term "eligibility" itself implies that another hurdle must be cleared before the right to placement accrues.[41] The Supreme Court has said:

> "There is a crucial distinction between being deprived of a liberty one has ..., and being denied a conditional liberty that one desires."[42]

Welch has been denied only the latter; the statute never addresses the former, i.e., a prisoner's *approval* or actual placement on work release.

As stated, there must be some criteria that, when met, mandate the outcome. The best that Welch can do is assert that La.R.S. 15:1111 creates a presumption that a prisoner serving in the last six months of his sentence will be allowed to participate

---

1910, 104 L.Ed.2d at 517. In other words, just because the word "shall" happens to be in the statute does not mean that the law limits the officials's discretion.

[39]*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548, 561 (1972).

[40]*Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464-65, 69 L.Ed.2d 158, 165 (1981).

[41]*See* Webster's New Collegiate Dictionary (1975) (defining "eligible" as "qualified to be chosen").

[42]*Greenholtz,* 442 U.S. at 9, 99 S.Ct. at 2104, 60 L.Ed.2d at 676.

in work release.[43]  But that presumption, if it exists, still does not get Welch where he needs to be.  This is where the eligibility/approval dichotomy provides a meaningful basis on which to distinguish *Allen* and *Spears.*  Even if Welch can point to a presumption, it is a presumption of eligibility;  the statute is silent as to approval.  Even, for the sake of argument, if the statute created a presumption of approval, a presumption is not, by its very definition, mandatory.

The implementing regulations flesh this out.  As mentioned, Department Regulation 30-14(A), which was the basis of the Department's initial denial of Welch's request, provided:

> The guidelines set forth herein are the *outside limits on eligibility* and should not prevent the denial of work release privileges to inmates whose records and observable behavior indicate that approval would not be appropriate or who, *in the discretion of the Secretary, are not otherwise acceptable.*[44]

The policy memorandum overruling regulation 30-14(A) also reflects this understanding.  That memo states that, while all inmates are eligible to participate in the work release program during their last six months, an inmate might be "blatantly ineligible" for any number of reasons.[45]  The policy change was designed not as a substitute for the procedure in place but only as a supplemental

---

[43]While the Supreme Court stated that the parole statute at issue in *Allen* also created a presumption, it explained that the presumption could be overcome only if stated criteria were met. In other words, the parole statute left no discretion in the officials.

[44]Department Regulation 30-14(A) (emphasis added).

[45]Memorandum from T. Sewell to All Wardens of Apr. 23, 1990, at 1.

15

means for identifying "the most suitable inmates for assignment to work release".[46]  This language plainly reflects the understanding that the wide discretion for selecting the participants remains within the Department.

The statute's overall scheme, while not entirely deferential, entrusts the Department with the actual operation of the work release program.  The statute does not dictate to the Department whom it must put on work release.  While it is true that some discretion in some aspects of the process is not fatal to finding a liberty interest, we conclude that here the latitude that La.R.S. 15:1111 places in the Department forecloses Welch's assertion that he was deprived of his due process rights.[47]  In sum, no liberty interest is created by La.R.S. 15:1111.[48]

Similarly, as no federal claims remain, we uphold the district court's refusal to entertain Welch's state law claims. The standard of review in this context is whether the district

---

[46]*Id.* at 1-2.

[47]The Court in *Spears,* for example, took pains to indicate that the Commission could have broad discretion in using its judgment in applying the standards set.  Still, that statute contained mandatory language which meant that once the officials determined that those standards were met, the prisoner had to be released.  The parole statute in *Allen* similarly gave broad discretion to the officials, but dictated that when the criteria were met, the outcome could not be changed.  Again, the different outcomes in the cases is a reflection of the distinct wording of each statute.

[48]Because the determination of the main issue in this case resolves the matter, we do not reach Welch's other claims.  We mention, however, that Welch has failed to allege any basis for his equal protection claim.  Specifically, he has not explained in what suspect class he claims membership.

16

judge abused his discretion.[49]  In general, a district court may entertain state law claims pursuant to its "supplemental jurisdiction," provided the claims arise from the case or controversy over which the district court had original jurisdiction.[50]  When all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims.[51]  In the light of our deferential review, we conclude that the district judge was within his discretion in refusing to exercise pendent jurisdiction.

## IV. Conclusion

We hold that La.R.S. 15:1111 does not create a liberty interest subject to the Due Process Clause.  The judgment of the district court is AFFIRMED.

* * * * * *

---

[49]*See Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993) (per curiam).

[50]28 U.S.C. § 1367(a).

[51]*Noble,* 996 F.2d at 799.

17