PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

HERBERT WILLIAMS,
    *Defendant-Appellant.*

No. 04-4580

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

HERBERT WILLIAMS,
    *Defendant-Appellant.*

No. 05-4670

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Cameron McGowan Currie, District Judge.
(CR-04-324)

Argued: March 15, 2006

Decided: April 11, 2006

Before LUTTIG and SHEDD, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Luttig and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** James Harold Babb, HOWLE & BABB, L.L.P., Sumter, South Carolina, for Appellant. Kevin Frank McDonald, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Columbia, South Carolina, for Appellee.

## OPINION

HAMILTON, Senior Circuit Judge:

Following his guilty plea to the charge of conspiracy to make, possess, and utter forged securities, 18 U.S.C. §§ 371, 513, Herbert Williams was sentenced to thirty-six months' imprisonment. Both Williams and the government appealed, challenging the sentence imposed by the district court. While the appeal and cross-appeal were pending, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). As a result of the Court's decision in *Booker*, we granted the government's motion to remand Williams' case for resentencing in accordance with *Booker*. On remand, Williams was sentenced to sixty months' imprisonment. He appeals his sentence and, for the reasons stated below, we affirm.

I

From approximately February 1999 until March 2001, Williams was part of a group that stole commercial checks from businesses and then altered them for cashing at grocery stores in South Carolina and Georgia. As a result of his criminal activities, Williams was indicted on several charges, but ultimately pled guilty to the charge of conspiracy to make, possess, and utter forged securities, 18 U.S.C. §§ 371, 513.

In preparation for sentencing, a Presentence Investigation Report (PSR) was prepared. The PSR recommended a base offense level of 6 under United States Sentencing Commission, *Guidelines Manual*

(USSG) § 2B1.1(a)(2). The PSR also recommended: (1) a 10 level enhancement because the amount of loss was $132,984.38, USSG § 2B1.1(b)(1)(F); (2) a 2 level enhancement because Williams used a social security card and a birth certificate from another person to utter some of the stolen checks, USSG § 2B1.1(b)(9)(C)(i); (3) a 2 level enhancement because Williams used a minor to assist in the commission of the offense, USSG § 3B1.4; (4) a 4 level enhancement for Williams' role in the offense, USSG § 3B1.1(a); and (5) a 3 level reduction for acceptance of responsibility, USSG § 3E1.1.[1] Consequently, Williams' total offense level of 21, coupled with his criminal history category of VI, yielded a sentencing range of 77 to 96 months' imprisonment. However, because the statutory maximum sentence for the conspiracy charge was sixty months, Williams' resulting Guidelines sentence was sixty months, USSG § 5G1.1(a).

At the initial sentencing on July 12, 2004, Williams argued that the use of the amount of loss, the unauthorized use of identification, the use of a minor, and the leadership role enhancements violated the principles outlined in *Blakely v. Washington*, 542 U.S. 296 (2004). The district court agreed and held that the sentencing enhancements could not be applied post-*Blakely*. Accordingly, the court determined it would impose a statutory sentence and sentenced Williams to thirty-six months' imprisonment. In imposing the sentence, the district court observed that Williams was receiving a far more favorable sentence than if the Guidelines had applied: "Well, I have given him credit for two extra years that he wouldn't get credit for if I sentenced him under the guidelines."

On July 19, 2004, the district court entered its judgment to which both parties appealed. While the appeal and cross-appeal were pending, the Supreme Court decided *Booker*. On March 30, 2005, the government filed a motion to have the case remanded for resentencing in light of *Booker*. On April 22, 2005, we granted a "limited remand for the purpose of resentencing . . . in accordance with the rules announced" in *Booker*.

---

[1]The parties agree that the enhancements contained in the PSR were not alleged in the indictment.

On remand, the district court applied the principles outlined in *Booker*. Because Williams' offense level was 21 and his criminal history category was VI, his sentencing range of 77 to 96 months' imprisonment exceeded the sixty month statutory maximum sentence. Thus, the statutory maximum sentence of sixty months became the Guidelines sentence, USSG § 5G1.1(a). The district court stated it considered "the factors in [§] 3553(a)" and found that there were no factors that warranted "a sentence other than the statutory maximum sentence in view of the fact that the guideline sentence would be even higher than that." The court sentenced Williams to the statutory maximum term of sixty months' imprisonment. An amended judgment was entered and Williams filed a timely notice of appeal.

II

Williams first contends that the district court's application on remand of various sentencing enhancements violated the *Ex Post Facto* Clause of the Constitution. He submits that, at the time of his criminal conduct, a sentencing court was not permitted to increase the maximum sentencing range on the basis of facts not charged in the indictment or proven to a jury beyond a reasonable doubt; therefore, he reasons, retroactive application of *Booker*, permitting the sentencing court to apply enhancements premised on court-found facts, violates his rights guaranteed by the *Ex Post Facto* Clause.

In *United States v. Jamison*, 416 F.3d 538 (7th Cir. 2005), the Seventh Circuit recognized that, even though a defendant has a right to fair notice of criminal penalties, the retroactive application of the remedial portion of *Booker* does not violate either due process or *ex post facto* guarantees:

> Jamison essentially seeks a sentence that comports with the Sixth Amendment requirements of *Booker*, but wants to avoid the possibility of a higher sentence under the remedial holding of *Booker*. Unfortunately for Jamison, the Supreme Court clearly instructed that both holdings should be applied to all cases on direct review. . . . [Moreover,] Jamison knew that he was committing a crime at the time he distributed cocaine base. The new judicial interpretation of the law brought about by *Booker* affects his punishment, not

whether his conduct was innocent. Distributing cocaine base was not made a crime by the Court's decision in *Booker*. Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code. Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in *Rogers*.

*Id.* at 539.

Williams does not attempt to distinguish the *Jamison* court's persuasive reasoning, nor could he. Williams was sentenced to sixty months' imprisonment, the statutory maximum for the conspiracy charge. Indeed, he was warned at his guilty-plea hearing that the maximum term of imprisonment for which he was eligible was five years' imprisonment. Therefore, we conclude that Williams had "fair warning" of the "possible consequences of his actions," as "spelled out in the United States Code." *Id.*

Williams also argues that the sentence imposed by the district court on remand from this court's April 22, 2005 order is presumptively vindictive because it is longer than the sentence imposed by the district court at Williams' initial sentencing. When a sentencing court imposes a more severe sentence on remand, the reasons for the court "doing so must affirmatively appear." *Alabama v. Smith*, 490 U.S. 794, 798 (1989) (citation and internal quotation marks omitted). "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information . . . justifying the increased sentence." *Id.* at 798-99 (citation and internal quotation marks omitted). However, the presumption of vindictiveness does not "apply in every case where a convicted defendant receives a higher sentence." *Id.* at 799 (citation and internal quotation marks omitted). Indeed, the presumption of vindictiveness is not designed to prevent the imposition of an increased sentence "for some valid reason associated with the need for flexibility and discretion in the sentencing process," but is "premised on the apparent need to guard against vindictiveness in the resentencing process." *Chaffin v. Stynchcombe*, 412 U.S. 17, 25 (1973). The presumption applies only where there exists a "reasonable likeli-

hood . . . that the increase in sentence is the product of actual vindictiveness," and "[w]here there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Smith*, 490 U.S. at 799 (citation and internal quotation marks omitted).

The district court's justifications for the longer sentence on remand are that it was required to apply our instructions on remand and the Supreme Court's decision in *Booker*. These justifications are plainly "valid reason[s] associated with the need for flexibility and discretion in the sentencing process." *Chaffin*, 412 U.S. at 25. Given such valid reasons for the increased sentence, there is no reasonable likelihood that the sentence was based on actual vindictiveness. Consequently, the presumption of vindictiveness does not apply in this case and the burden is on Williams to prove actual vindictiveness.

Williams offers no reason why we should find vindictiveness in a longer sentence that results from the unique situation where the district court understandably could not predict the remedial outcome in *Booker*. In short, we hold that there is no vindictiveness in a post-*Booker* sentence that exceeds the original pre-*Booker* sentence solely because *Booker* changed the law. *See United States v. Reinhart*, No. 05-30245, 2006 WL 541037, at *2 (5th Cir. March 7, 2006) (holding that higher sentence on *Booker* remand not vindictive); *United States v. Bad Marriage*, 439 F.3d 534, 539 (9th Cir. 2006) (same); *United States v. Goldberg*, 406 F.3d 891, 894 (7th Cir. 2005) (same).

Williams next contends that the sixty month sentence imposed by the district court was unreasonable under *Booker*. Although the Sentencing Guidelines are no longer mandatory, *Booker* makes clear that a sentencing court "must consult the Guidelines and take them into account when sentencing." 543 U.S. at 224 (Breyer, J., opinion of the Court). The sentencing court should consider this sentencing range along with the other factors described in 18 U.S.C. § 3553(a) and then impose a sentence. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). The sentence must be "within the statutorily prescribed range . . . and is reasonable." *Id.* at 547. If the sentence imposed is within the properly calculated sentencing range, it is presumptively reasonable. *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006).

In sentencing Williams on remand, the district court considered the properly calculated advisory sentencing range and the factors in § 3553(a). Because the court sentenced Williams to the sixty months after properly considering the § 3553(a) factors, we conclude that the sixty month sentence is reasonable.

## III

For the reasons stated herein, the judgment of the district court is affirmed.[2]

*AFFIRMED*

---

[2]We also find no merit to Williams' argument that his sixty month sentence violates his rights guaranteed by the Double Jeopardy Clause of the Fifth Amendment.