**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-6661**

---

TIMOTHY JARED AUSTIN,

       Petitioner – Appellant,

     v.

MARVIN PLUMLEY, Warden,[1]

       Respondent - Appellee.

---

Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. David A. Faber, Senior District Judge. (1:11-cv-00892)

---

Argued: January 28, 2014       Decided: April 7, 2014

---

Before KING, SHEDD, and THACKER, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion. Judge Shedd wrote a dissenting opinion.

---

**ARGUED:** Steven Strasberg, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Elbert Lin, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF:** Erica Joan Hashimoto, Associate Professor, Victoria Cuneo, Third Year Law Student, Appellate

---

[1] Marvin Plumley is substituted as Respondent for his predecessor, Adrian Hoke, as Warden of the Huttonsville, West Virginia, Correctional Center. See Fed. R. App. P. 43(c)(2).

Litigation Clinic, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Patrick Morrisey, Attorney General, Christopher S. Dodrill, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Timothy Jared Austin ("Appellant") appeals the district court's dismissal of his federal habeas petition, filed against the Warden of the Huttonsville, West Virginia Correctional Center (hereinafter, the "State"), pursuant to 28 U.S.C. § 2254. While serving a term of incarceration in the West Virginia prison system for breaking and entering, Appellant walked away from an inmate road crew and subsequently pled guilty to attempted escape.

At his sentencing for the attempted escape conviction, the West Virginia court (the "State Sentencing Court") sentenced Appellant to a term of imprisonment that was neither purely concurrent nor purely consecutive to his original sentence. Appellant filed an expedited motion to correct that sentence with the State Sentencing Court, and when it was not ruled upon for nearly 50 days, Appellant filed a petition for writ of mandamus, or in the alternative, an original petition for habeas corpus to the Supreme Court of Appeals of West Virginia (the "State Supreme Court"). That petition asked the State Supreme Court to direct the State Sentencing Court to act on Appellant's motion to correct the sentence, or to rescind his sentence as violative of the Due Process Clause. Four days after the State Sentencing Court received a copy of the petition, it entered an amended sentencing order, changing Appellant's sentence to a

3

purely consecutive one, thereby extending Appellant's time in prison.

Appellant appealed the amended sentencing order to the State Supreme Court, arguing that he was entitled to a presumption of judicial vindictiveness. The State Supreme Court, however, found that in the amended sentencing order, the State Sentencing Court only meant to clarify its original intent in sentencing Appellant, and, thus, the presumption did not attach. In considering Appellant's subsequent federal habeas petition, the district court concluded that this finding was not based on an unreasonable determination of the facts; therefore, a presumption of judicial vindictiveness did not arise.

We disagree. The State Supreme Court's decision was based on an unreasonable determination of the facts in the record, and the unique facts presented in this case give rise to a presumption of vindictiveness, which the State fails to rebut. As such, we vacate the judgment of the district court, and remand with instructions to grant a conditional writ of habeas corpus.

I.

A.

State Proceedings

In 2004, Appellant was convicted in Wood County, West Virginia, of breaking and entering and was sentenced to one to

4

fifteen years' imprisonment, beginning December 29, 2004. Appellant was to be eligible for parole in March 2010. While serving the breaking and entering sentence, Appellant walked away from an inmate road crew, was arrested two days later, and charged with escape. On September 24, 2009, Appellant pled guilty to the lesser-included offense of attempted escape, which carried a sentence of one to three years' imprisonment.

1.

Original Sentence

On November 12, 2009, Appellant was sentenced for the attempted escape by the State Sentencing Court in McDowell County, West Virginia. At the sentencing hearing, the State Sentencing Court first asked for Appellant's discharge date on the breaking and entering conviction, to which Appellant's counsel responded, "December 2014, he believes, Your Honor." J.A. 13.[2] The court then asked, "[W]hen is he eligible for parole again?" to which counsel responded, "This March [i.e., March 2010]." Id. The State Sentencing Court then explained,

> [I]f I remember correctly, you were out on a work crew. . . . And you just walked off. That's not good. It's not the type of jail escape that we see in the movies where there's guns blazing and everything of that nature, and it's not a jail escape where somebody has tunneled under to get out, but this is

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

still bad because you have breached the trust, and when you breach a trust, it makes it harder on your fellow inmates because the correctional facility may take the position that, we're just not going to do this anymore, and that's not good. That's not good.

Id. The court continued,

Now, I've got several ways that I can sentence you. I can sentence you to a one to three, starting today [November 12, 2009], or I can sentence you to a one to three starting when you're discharged, but I'm going to split the baby in half. I'm going to sentence you to a one to three, and your one to three is going to begin March of 2010, which means you're not going to get out on parole in March, but you will start your one year then.

Now, why am I doing it that way? Well, I'm sure you've suffered some punishment by losing good time and stuff because of this but because that's not a good thing to do, to walk off. Now, had you done those other ways and there had been a violent type jail escape or whatever, I would have put that at the end of your sentence, but it wasn't. If I remember, you just walked off in the Berwind area and spent two or three days out in the woods, and they got you in the Town of War, and for that, you've already received some punishment because of your loss of good time and probably, loss of the possibility of being paroled, but I do think you should serve some time for it; so, by making [the sentence] beginning in March of 2010, which is about 4 or 5 months from now and not giving you any back credit, that's probably going to cost you -- well, it will cost you your opportunity for parole because you won't be eligible then until March of 2011, and if the parole board wants to parole you on both of those, that's fine, and if not, well, you'll remember that the next time you go for a little stroll. Okay?

Id. at 15-16 (emphases supplied). The sentencing order, which was entered November 23, 2009, correspondingly stated,

It is, therefore, ORDERED that the defendant . . . be sentenced to the custody of the Commissioner of the

6

West Virginia Division of Corrections for an indeterminate period of not less than one (1) year nor more than three (3) years at an appropriate correctional facility designated by said Commissioner and no fine. It is further ORDERED that the defendant serve this sentence beginning March 2010.

Id. at 20 (emphasis supplied).

2.

Motion to Correct Sentence

On August 31, 2010, nearly six months after he began serving his sentence on the attempted escape conviction, Appellant filed a motion with the State Sentencing Court to correct that sentence pursuant to West Virginia Rule of Criminal Procedure 35(a).[3] Appellant contended,

the Court was under the misapprehension that it could defer the start of the instant sentence until Defendant discharged his previous sentence, [but] the Court's sentencing discretion was limited [to] whether Defendant's instant one-to-three (1-3) year sentence would run concurrent with or consecutive to his previous one-to-fifteen (1-15) year sentence[.]

. . .

[A]t the November 12, 2009, Sentencing Hearing Defendant was already eligible for parole consideration on the [breaking and entering] sentence . . . . Therefore, by delaying Defendant's effective sentence date . . . to March 1, 2010, three and a half (3 1/2) months past his actual sentence date of

---

[3] This rule provides, "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence [i.e., within 120 days after the sentence is imposed]." W. Va. R. Crim. P. 35(a).

7

November 12, 2009, the [State Sentencing Court] _increased_ Defendant's minimum term on the instant offense to _fifteen and a half (15 1/2)_ months.

Def.'s Mot. for Summ. J., Ex. 5, Austin v. Hoke, No. 1:11-cv-892 (S.D. W. Va. Nov. 10, 2011; filed Sept. 24, 2012), ECF No. 27-1 at 52-53 (first emphasis supplied, others in original). Attached to the motion was a proposed amended sentencing order, which ostensibly set forth a purely concurrent sentence and an effective sentencing date of November 12, 2009, rather than March 2010. Appellant also asked that the motion be expedited because he was scheduled to meet with the parole board in November 2010.

3.

Amended Sentence

By mid-October 2010, when the motion had not yet been ruled upon, Appellant submitted a "Petition for Writ of Mandamus or in the alternative Original Petition for Writ of Habeas Corpus" (the "Petition") to the State Supreme Court, which was formally filed on October 19, 2010. The State Sentencing Court received a copy of the Petition on October 18, 2010, and four days later, on October 22, 2010 -- before the State Supreme Court ruled on the Petition -- the State Sentencing Court issued an order amending the original sentence (the "Amended Sentencing Order"), which stated,

8

> On the 18th day of October, 2010, the undersigned Judge received a copy of a Writ of Mandamus or in the alternative Original Petition for Writ of Habeas Corpus [and a] proposed Amended Sentencing Order. After reviewing this matter, it is clear to this Court that an Amended Scheduling [sic] Order is <u>needed to clarify the original Sentencing Order</u> entered on November 23, 2009. . . . It was the intent of this sentencing court that the sentence imposed on November 12, 2009 be served consecutively with the unrelated sentence the defendant was already serving on November 12, 2009. It was the intent of the sentencing court to give the defendant credit for time served from his arraignment to the date of sentencing and that the balance of his sentence be served consecutively to the sentence he was already serving in an unrelated matter.

J.A. 22 (emphasis supplied). The State Supreme Court then denied the Petition on November 22, 2010, simply stating, "the Court is of opinion that a rule should not be awarded, and the writ prayed for by the petitioner is hereby refused." Austin, No. 1:11-cv-892, ECF No. 27-1 at 57.

4.

Appeal of Amended Sentence

Appellant appealed the Amended Sentencing Order to the State Supreme Court. Appellant argued that after he "invoked lawful remedies to correct an illegal sentence," the State Sentencing Court "increased [his] aggregate sentence based on purported, but unreasoned, judicial intent that is controverted by the . . . record, thereby creating a presumption of judicial vindictiveness . . . ." Austin, No. 1:11-cv-892, ECF No. 27-1

9

at 83.  On October 25, 2011, the State Supreme Court rejected the appeal, explaining,

> It is clear from the amended sentencing order that some confusion arose from the language of the original sentencing order.  In clarifying its intention, the circuit court stated in the amended sentencing order that, "[i]t was the intent of the sentencing court that the sentence imposed on November 12, 2009[,] be served consecutively with the unrelated sentence that the [petitioner] was already serving on November 12, 2009."  . . .  It is from the resulting confusion that petitioner finds the basis for his argument that his sentence was impermissibly increased by thirty-three months upon entry of the amended sentencing order.  However, this Court finds no merit in petitioner's argument.  Had the circuit court originally intended for these two sentences to run concurrently, it is hard to imagine how the subsequent sentence would have punished the petitioner or served to deter him from future escapes.  It is clear from the record that the circuit court intended for the sentences to run consecutively, and that the sentence was not impermissibly increased.  As such, the petitioner's due process rights were not violated by the entry of the amended sentencing order.

J.A. 25 (emphasis supplied).

B.

Federal Proceedings

Two weeks after the State Supreme Court's decision, on November 10, 2011, Appellant filed a habeas petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of West Virginia.  The matter was transferred to the Southern District of West Virginia, and the State filed a motion for summary judgment on September 24, 2012.  The habeas petition and the motion were referred to the federal magistrate

10

judge.  The magistrate judge issued a proposed findings and recommendation ("PF&R") on December 4, 2012, recommending that Appellant's petition be granted and the State's motion be denied.  The PF&R explained,

> Petitioner argues that the West Virginia Supreme Court erred in finding that "[i]t is clear from the record that the circuit court intended for the sentences to run consecutively."  Based on a review of the [pertinent] documents, the undersigned finds that Petitioner has rebutted the presumption of correctness by clear and convincing evidence.  During Petitioner's sentencing hearing conducted on November 12, 2009, the [State Sentencing Court] specifically ordered Petitioner's escape sentence to begin in March, 2010. The record reveals that the [State Sentencing Court] ordered Petitioner's escape sentence to begin in March, 2010, after being advised that Petitioner's discharge date for his prior sentence was December, 2014.  The [State Sentencing Court] explained that if Petitioner's escape had involved violence, the Court would have directed Petitioner's escape sentence to run consecutive to his prior sentence.

J.A. 49 (internal citations and footnote omitted).  Then, the magistrate court explained that Appellant met the requirements for the presumption of vindictiveness:

> A presumption of vindictiveness arises when "there is a 'reasonable likelihood' that an unexplained increase in sentence is the product of actual vindictiveness on the part of the sentencing authority."  [Alabama v.] Smith, 490 U.S. 794 [(1989)]. In the instant case, the [State Sentencing Court] merely explained that an Amended Sentencing Order was necessary "to clarify the original Sentencing Order entered on November 23, 2009."  The [State Sentencing Court], however, failed to adequately explain the increase in Petitioner's sentence.  Accordingly, the undersigned finds that Petitioner's amended sentence gives rise to a presumption of vindictiveness as there is a "reasonable likelihood" that the unexplained increase

11

is the product of actual vindictiveness on the part of the sentencing authority.

Id. at 52-53 (internal citation omitted).  The magistrate court also considered whether the State could rebut this presumption, and concluded that it could not.  See id. at 53-54.

The district court, however, disagreed.  After the State filed objections to the PF&R, the district court reviewed the matter and concluded the PF&R did not take into account the level of deference owed to the State Supreme Court's decision. The district court explained,

> It is fair to say that the record contains conflicting evidence as to the trial court's intentions with respect to Austin's sentence and is susceptible to several different interpretations.  One of those possible interpretations -- that the [State Sentencing Court] intended for Austin's sentence on the Attempted Escape to run consecutive to his undischarged term of imprisonment -- "is fairly and adequately supported by the record, and is therefore entitled to section 2254's presumption of correctness."  Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006).
>
> . . .
>
> Furthermore, [Appellant] has not shown that the [S]tate [Supreme] [C]ourt's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Merzbacher [v. Shearin], 706 F.3d [356,] 367 [(4th Cir. 2013)].  Given that there was some evidence that the [State] [S]entencing [C]ourt intended to impose a consecutive sentence, this court cannot conclude that the [S]tate [Supreme] [C]ourt's determination in this regard was unreasonable.

J.A. 64, 65.  The district court also disagreed that the presumption of vindictiveness was met, stating,

12

> [W]hile his Rule 35 motion remained pending, [Appellant] filed a petition for writ of mandamus with the [State Supreme Court]. The amended sentencing order was issued prior to the higher court ruling on the mandamus petition. Accordingly, there was no reversal or similar event "prod[ding] the sentencing court into a posture of self-vindication."

Id. at 67 (quoting Texas v. McCullough, 475 U.S. 134, 139 (1986)). Therefore, the district court dismissed Appellant's petition.[4]

Appellant filed a timely notice of appeal and a petition for certificate of appealability, which this court granted on September 6, 2013.

## II.

We review de novo a district court's denial of relief in habeas corpus proceedings under 28 U.S.C. § 2254. See Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of state court adjudications is constrained to decisions that were either "contrary to, or involved an unreasonable application of, clearly established Federal law," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

---

[4] The district court did not specifically rule on the State's motion for summary judgment.

III.

Appellant filed his habeas petition pursuant to 28 U.S.C. § 2254, which provides,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Appellant's first argument pertains to subsection (d)(2), above: He contends the State Supreme Court rendered its decision based on an unreasonable determination of the facts in light of the evidence presented to it. Second, he argues that he is entitled to a presumption of judicial vindictiveness, and the State has not rebutted this presumption. We will address each argument in turn.

A.

1.

AEDPA creates a presumption that factual determinations made by the state court are correct. See 28 U.S.C. § 2254(e)(1). Further, "[t]he applicant shall have the

14

burden of rebutting the presumption of correctness by clear and convincing evidence." Id. We recently held, "'[T]o secure habeas relief, petitioner must demonstrate that a state court's finding . . . was incorrect by clear and convincing evidence, and that the corresponding factual determination was "objectively unreasonable" in light of the record before the court.'" Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (quoting Miller-El v. Cockrell, 537 U.S. 322, 348 (2003)). The Supreme Court has explained that on federal habeas review, we must uphold a state court decision when, "[r]eviewing all of the evidence," the state court's decision "even if . . . debatable, . . . is not unreasonable." Wood v. Allen, 558 U.S. 290; 130 S. Ct. 841, 850 (2010).

In Taylor v. Grounds, the Seventh Circuit concluded that the Illinois Supreme Court reached a factual determination that was objectively unreasonable in light of the record. See 721 F.3d 809, 820 (7th Cir. 2013). Taylor filed a habeas petition based on the argument that his trial counsel, who also represented his co-defendant brother, operated under a conflict of interest. In rejecting Taylor's claim, the Illinois Supreme Court relied upon the trial court's "purported implicit factual finding that [the attorney] rejected [] three witnesses [that would have been helpful to Taylor but detrimental to his brother] for strategic reasons unrelated to the conflict of

15

interest . . . ." Id. at 821. The state supreme court acknowledged that the trial court "made no explicit factual finding" but, based on conflicting testimony at the evidentiary hearing, "evidently found [the attorney's] testimony more credible." Id. (internal quotation marks omitted).

The Seventh Circuit discounted this factual finding because, after examining the trial court's transcript, it concluded, "[t]he ruling contains no mention of the word 'credibility' nor includes any language suggesting a comparison of believability . . . [and] such a sparse decision devoid of factual matter cannot support the Illinois Supreme Court's determination of an implicit credibility finding." Grounds, 721 F.3d at 822; see also Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) ("[W]here the State courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.").

Like Grounds, here, there is no support in the record for the State Supreme Court's finding that the State Sentencing Court "intended for the sentences to run consecutively." J.A. 25. First, the State Sentencing Court was aware that Appellant was eligible for discharge on the underlying conviction in

16

December 2014, but in its sentencing order, it deliberately set the effective sentencing date at Appellant's parole eligibility date, March 2010, instead. Compare J.A. 20 ("It is . . . ORDERED that the defendant serve this sentence beginning March 2010."), with id. at 13 (Appellant's counsel advising the State Sentencing Court that Appellant's release date was likely December 2014).

Whereas the State Sentencing Court's order is enough to demonstrate the court's intent at sentencing, see Bell v. Thompson, 545 U.S. 794, 805 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders." (internal quotation marks omitted)), the State Sentencing Court's order was consistent with and bolstered by its spoken words at the sentencing hearing. The sentencing hearing transcript shows that, instead of a purely concurrent or consecutive sentence, the court intended to assign some hybrid of these two options. See J.A. 15 ("I can sentence you to a one to three, starting today [which would run concurrently], or I can sentence you to a one to three starting when you're discharged [which would run consecutively], but I'm going to split the baby in half." (emphasis supplied)); id. ("Now, had you [escaped] those other ways and there had been a violent type jail escape or whatever, I would have put that at the end of your sentence, but it wasn't."). Therefore, on this

17

record it is crystal clear that the State Sentencing Court intended to sentence Appellant neither to completely concurrent, nor completely consecutive sentences.

The State Supreme Court reasoned that if the trial court actually intended the sentences to run concurrently, "it is hard to imagine how the subsequent sentence would have punished the petitioner or served to deter him from future escapes." J.A. 25. This statement, however, is also belied by the record. The trial court expressly stated its intent to impose extra punishment for the escape:

> [B]y making [the sentence] beginning in March of 2010, which is about 4 or 5 months from now and not giving you any back credit, that[] . . . will cost you your opportunity for parole because you won't be eligible then until March of 2011, and if the parole board wants to parole you on both of those, that's fine, and if not, well, you'll remember that the next time you go for a little stroll.

Id. at 15-16. See Maddox, 366 F.3d at 1008 ("Failure to consider key aspects of the record is a defect in the fact-finding process.").

Based on the foregoing, we conclude that Appellant has rebutted the "presumption of correctness" of the State Supreme Court's decision "by clear and convincing evidence," namely, the words in the original sentencing order and the statements of the State Sentencing Court during the sentencing hearing. 28 U.S.C. § 2254(e)(1); see also Bell v. Ozmint, 332 F.3d 229, 237 (4th

18

Cir. 2003). Thus, Appellant has met the requirements of § 2254(d)(2). The district court erred in deciding otherwise.

2.

Having decided that Appellant has satisfied § 2254(d)(2), i.e., the State Supreme Court's decision was based on an unreasonable determination of the facts, we must now resolve the level of deference otherwise owed to the State Supreme Court's decision.

The Supreme Court of the United States has directed that the federal courts should not apply AEDPA deference when "a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law" under 28 U.S.C. § 2254(d)(1). Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Although neither the Supreme Court nor this court has yet to consider the issue, the weight of the authority establishes that we should likewise decline to apply AEDPA deference when a petitioner satisfies § 2254(d)(2). See, e.g., Magnan v. Trammell, 719 F.3d 1159, 1175 (10th Cir. 2013) ("Because the [state court's decision on a jurisdictional issue] 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. § 2254(d)(2), we are obligated to review the jurisdictional issue de novo[.]"); Hurles v. Ryan, 706 F.3d 1021, 1030 (9th Cir. 2013); Cooper v. Sec'y, Dep't of Corr., 646

19

F.3d 1328, 1353 (11th Cir. 2011); Rice v. White, 660 F.3d 242, 252 & n.4, 257 (6th Cir. 2011).

Therefore, we proceed to consider the judicial vindictiveness argument under a purely de novo standard, owing no deference to the State Supreme Court's decision.

B.

1.

In North Carolina v. Pearce, the Supreme Court of the United States held, "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. 711, 725 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). Further, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." Id. In light of these conclusions, the Supreme Court explained that whenever a judge "imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Id. at 726. The Supreme Court later interpreted Pearce as applying "a presumption of vindictiveness, which may be overcome only by objective information in the

20

record justifying the increased sentence." Wasman v. United States, 468 U.S. 559, 565 (1984) (internal quotation marks omitted).

The broad sweep of Pearce has been limited, however. The Supreme Court decided that the presumption did not arise in the following situations: where an increased sentence was imposed by a superior court in a system that gave the defendant convicted of a misdemeanor in an inferior court the right to trial de novo in a superior court, see Colten v. Kentucky, 407 U.S. 104, 116 (1972); a second jury, on retrial following a successful appeal, imposed a higher sentence than a prior jury, where the second jury was completely unaware of the first sentence, see Chaffin v. Stynchcombe, 412 U.S. 17, 27 (1973); and a defendant was first sentenced by a jury and, after retrial, was sentenced to a longer term of imprisonment by the judge who granted the defendant's motion for new trial, where the defendant desired that the judge resentence him, and the judge provided sufficient reasons for the increase, see Texas v. McCullough, 475 U.S. 134, 140 (1986).

The Supreme Court has extended the presumption, however, to the prosecutorial vindictiveness context where, while a defendant's misdemeanor conviction was on de novo appeal, the prosecutor filed a felony indictment based on the same conduct. See Blackledge v. Perry, 417 U.S. 21, 27 (1974)

21

("[T]he opportunities for vindictiveness [where the central figure is not the judge or jury, but the prosecutor] are such as to impel the conclusion that due process of law requires a rule analogous to that of the Pearce case.").

In 1989, Pearce was partially overruled in Smith, which held that when a defendant receives one sentence after a guilty plea, and then receives an increased sentence after the guilty plea was vacated and the defendant was later convicted in a jury trial, the presumption does not attach. See 490 U.S. at 803. Smith explained, "While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" Id. at 799 (quoting McCullough, 475 U.S. at 138). Rather, Smith declared that Pearce's application was "limited . . . to circumstances where its objectives are thought most efficaciously served." Id. (internal quotation marks omitted). Indeed, the "evil the Pearce Court sought to prevent was not the imposition of enlarged sentences after a new trial, but vindictiveness of a sentencing judge." Id. (internal quotation marks and alteration omitted).

Thus, after Smith, a petitioner is required to show a "reasonable likelihood that the increase in sentence is the

22

product of actual vindictiveness on the part of the sentencing authority." 490 U.S. at 799 (internal quotation marks and citations omitted); see also United States v. Williams, 444 F.3d 250, 254 (4th Cir. 2006) ("[T]he presumption of vindictiveness is not designed to prevent the imposition of an increased sentence 'for some valid reason associated with the need for flexibility and discretion in the sentencing process,'" but is "'premised on the apparent need to guard against vindictiveness in the resentencing process.'" (quoting Chaffin, 412 U.S. at 25)). It follows that when a court imposes a more severe sentence than the one initially imposed, the court must "affirmatively identify[] relevant conduct or events," justifying the increased sentence, Wasman, 468 U.S. at 572, including those that throw "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities," Pearce, 395 U.S. at 723 (internal quotation marks omitted).

2.

a.

Against this backdrop, we must first consider whether the Pearce presumption can apply in this case. We have before us a unique factual scenario: A defendant is sentenced; he files an expedited Rule 35(a) motion to correct an allegedly illegal sentence; he then files a petition asking a higher tribunal to direct the sentencing court to rule on the motion or

23

void his sentence entirely; before that petition is ruled upon, and only four days after it is received by the sentencing court, the sentencing court acknowledges receipt of a copy of the petition and increases its original sentence, citing a reason that is clearly unsupported by the record. This unique scenario is one of first impression in this circuit, and elsewhere. We look to the policy and logic of Pearce and its progeny as our guide.

The Pearce opinion was "premised on the apparent need to guard against vindictiveness in the resentencing process." Chaffin, 412 U.S. at 25 (emphasis in original). The presumption "exists to protect against the possibility of vindictiveness; therefore, the circumstances of resentencing must be examined to determine whether they carry such an inherent threat. If not, there [i]s no reason to apply the presumption." United States v. Rodriguez, 602 F.3d 346, 354 (5th Cir. 2010) (citation omitted). In the prosecutorial vindictiveness context, the presumption was "designed to spare courts the unseemly task of probing the actual motives of the prosecutor." United States v. Goodwin, 457 U.S. 368, 372 (1982) (internal quotation marks omitted). The Supreme Court explained,

> Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. . . . Given

24

the severity of such a presumption, however -- which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct -- the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

Id. at 373 (emphasis supplied).  In this vein, Smith made clear that the purpose of the Pearce presumption was to prevent "not the imposition of enlarged sentences after a new trial, but vindictiveness of a sentencing judge."  490 U.S. at 799 (internal quotation marks omitted).  Likewise, the Fifth Circuit has stated, "[i]mposition of a harsher sentence by the original judge triggers a presumption of vindictiveness that acts as an aid to defendants who would otherwise have to shoulder a heavy burden of proof."  Kindred v. Spears, 894 F.2d 1477, 1479 (5th Cir. 1990).

Although the Supreme Court has been presented with situations in which the alleged vindictiveness occurred "after a new trial," Wasman, 468 U.S. at 565 (internal quotation marks omitted); "upon retrial," Blackledge, 417 U.S. at 26; "upon conviction after retrial," Chaffin, 412 U.S. at 24; and "following a successful appeal and reconviction," Colten, 407 U.S. at 115, in lower courts, the presumption has been extended beyond these contexts.  For example, some federal courts of appeals have extended the Pearce presumption to parole determinations.  See, e.g., Marshall v. Lansing, 839 F.2d 933,

947 (3d Cir. 1988) ("Just as a sentencing judge might resent a challenge to an underlying conviction which he himself had overseen, so too might the [Parole] Commission look unkindly upon a successful court challenge to its rating of a prisoner's offense severity, thus supplying a motive for retaliation."); Bono v. Benov, 197 F.3d 409, 419 (9th Cir. 1999) ("The Commission, which acts by statute as a singular entity, has an institutional motivation to protect its 'much-valued discretion' by engaging in the type of vindication that might discourage challenges to its authority, particularly those made by resort to the courts."). At least one court has suggested that the presumption be extended to the context of a Rule 35(a) challenge. See United States v. Paul, 783 F.2d 84, 88 (7th Cir. 1986) ("[W]e held in United States v. Jefferson[, 760 F.2d 821 (7th Cir. 1985), vacated on other grounds and remanded, 474 U.S. 806 (1985)] that Pearce's proscription applies not only to resentencing after retrial, but also to resentencing after vacation of an illegal sentence. Thus, Pearce would prohibit a district court from increasing a sentence upon a defendant's successful Rule 35(a) attack, in the absence of the required information of misconduct." (citation omitted)). Still others have recognized the need for protection from judicial vindictiveness when a party simply demonstrates its intention to appeal. See Mahoney v. State, 281 A.2d 421, 425 (Md. App. 1971)

26

("It logically follows that if the courts are prohibited from exercising vindictiveness on a retrial because of a defendant's successful appellate attack, they are likewise prohibited from exercising vindictiveness because of a defendant's intention to appeal.").[5]

In light of this guidance, we are satisfied that application of the presumption of vindictiveness in this case would comport with the spirit and logic set forth in Pearce, Smith, and their progeny. Wasman declared,

> If it was not clear from the Court's holding in Pearce, it is clear from our subsequent cases applying Pearce that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights.

---

[5] Some state courts have also applied Pearce upon a defendant's attack of his sentence or intent to appeal, even if such action had not yet been taken or ruled upon by a higher tribunal. See, e.g., State v. Hildago, 684 So.2d 26, 31-32 (La. Ct. App. 1996) (due process violated where trial judge increased a defendant's sentence after defendant attacked his plea and then filed a motion to reconsider the sentence, and the court stated, "instead of . . . accepting his sentence, he chose instead to attack his plea. . . . And in thinking about it, I think I was too easy on him the first time around."); State v. Thompson, 613 A.2d 192, 193 (Vt. 1992) (amended sentence violated due process where it was increased after the defendant "argu[ed] that the court's proposed sentence was illegal and [] expressed [her] intent to appeal"); Colburn v. State, 501 S.W.2d 680, 683 (Tex. Crim. App. 1973) (due process violated where harsher sentence was imposed "to punish the appellant more severely because he gave notice of appeal").

Wasman, 468 U.S. at 568 (first emphasis in original, second emphasis supplied); see also Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); Williams, 47 F.3d at 660 ("It is . . . a violation of due process to penalize a criminal defendant for exercising his constitutional rights or for pursuing a statutory right of appeal or collateral remedy." (internal citation omitted)); see also United States v. Ludien, 769 F.2d 981, 985 (4th Cir. 1985) ("[I]t is beyond doubt that a sentence enhanced, whether before or after commencement of service, because of the vindictiveness or other plainly improper motive of the trial court would be fundamentally unfair and would deny the defendant due process.").

Here, it is without question that when Appellant was resentenced, he was exercising rights guaranteed under the statutes and Constitution of West Virginia. See W. Va. Code § 53-1-3 (establishing statutory right to file a petition for mandamus); Id. § 53-4A-1 (providing that a person may file a petition for habeas corpus with the State Supreme Court to "seek[] . . . correction of [a] sentence"); W. Va. Const. art. III, § 17 ("[J]ustice shall be administered without sale, denial or delay."); State ex rel. Patterson v. Aldredge, 317 S.E.2d 805, 807 (W. Va. 1984) ("In addition to the constitutional and

28

ethical provisions which compel the prompt disposition of all civil actions, it should be noted that our rules of civil procedure anticipate that judges will act in a timely fashion.").

This case is also different from those Supreme Court cases in which a different entity resentenced the defendant. For example, in Chaffin, where a jury, rather than a judge, increased a defendant's sentence, the jury did not have a "personal stake" in the prior conviction and was not "sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." Chaffin, 412 U.S. at 27. In Colten, the Court rejected the notion that "the hazard of being penalized for seeking a new trial, which underlay the holding of Pearce, also inheres in the de novo trial arrangement." 407 U.S. at 116. But the State Sentencing Court, which was presented with a motion to correct its allegedly illegal sentence -- and soon after, a copy of a petition for mandamus and habeas corpus relief submitted to a higher tribunal based on that sentence -- certainly had a personal stake in the original sentence, and because it still retained jurisdiction over the Rule 35(a) motion, the hazard of Appellant being penalized was pervasive.

Moreover, applying the rebuttable presumption of vindictiveness in this case will further the prophylactic

function of the presumption.  Cf. United States v. Campbell, 106 F.3d 64, 67 (5th Cir. 1997) (The presumption is "a prophylactic [rule] addressed more to protect future litigants who appeal than to the injustice done in the actual case," and "[t]olerance of a court's vindictiveness might 'chill' a defendant's right to seek an appeal of her sentence." (quoting Wasman, 468 U.S. at 564)).  We cannot -- and would not -- declare that the statutory right to file a petition for mandamus or habeas corpus in West Virginia is any less susceptible to a chilling effect based on vindictiveness than the statutory right to file an appeal.

b.

The State contends that the presumption does not apply in this case because "there must have been some action by a higher court that placed the sentencing judge in a defensive posture; it is not triggered when a sentencing court amends a sentence on its own."  Appellee's Br. 26 (citing Kindred, 894 F.2d at 1479-80).  The State contends, "'unlike the judge who has been reversed,' the judge who amends a sentence on his own has 'no motivation to engage in self-vindication.'"  Id. (quoting McCullough, 475 U.S. at 139).

The State relies on McCullough, in which the Supreme Court concluded that the Pearce presumption did not arise because, inter alia, the same judge who gave the defendant an increased sentence after retrial previously granted the motion

30

for new trial in the first place.  The Court contrasted that situation with one in which "the judge [was] reversed," and explained,

> Presuming vindictiveness [because a party's motion for a new trial was granted] alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal. . . . We decline to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion.  The presumption of Pearce does not apply in situations where the possibility of vindictiveness is this speculative, particularly since the presumption may often "operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct[.]"

McCullough, 475 U.S. at 139 (quoting Goodwin, 457 U.S. at 373) (emphasis supplied).

This passage in McCullough hardly suggests that Pearce could never apply to a situation where, after a post-trial motion is filed, an enhanced sentence is handed down by the same judge with no additional reasoning provided.  In fact, such dicta must be assessed in the context of McCullough, where the defendant chose to have the judge sentence him, and that judge had actually granted the defendant's motion for a new trial, agreeing on the record that the defendant's claims had merit; therefore, the trial judge "had no motivation to engage in self-vindication."  475 U.S. at 139.  Here, the possibility of vindictiveness is much less "speculative" than in a case in which a new trial motion was granted "alone."  Id. (internal

31

quotation marks omitted).  Indeed, the State Sentencing Court was in a posture in which that motivation was reasonably possible.

The State also relies on the Fifth Circuit's Kindred decision for the proposition that "vindictiveness becomes a danger only where an event prods the sentencing court into a posture of self-vindication."  894 F.2d at 1480; see also Nulph v. Cook, 333 F.3d 1052, 1057-58 (9th Cir. 2003) ("We have held that no reasonable likelihood of vindictiveness exists unless there is some 'triggering event,' such as a reversal and remand.").  In so holding, Kindred decided that reversal on appeal of an order and remand for a new hearing was a sufficient triggering event for the presumption, but review by a parole commission, which occurred merely by operation of statute, was not.  See id. at 1480.  The court of appeals explained, "Kindred's . . . appearance before the Commission was not in the role of the errant schoolboy who dared challenge his elder's wisdom but rather that of a passive cog in a statutory machine." Id.

Kindred, even if it were binding on this court, would not alter our decision today.  Appellant was hardly a "passive cog in a statutory machine" when he filed his Rule 35(a) motion and petition for mandamus or habeas relief.  Kindred, 894 F.2d at 1480.  He was, in fact, in the role of "errant schoolboy"

32

because he was filing a petition to command the State Sentencing Court to rule on his motion and force his "elder" to act, or, in the alternative, void his sentence altogether.

Furthermore, the State Sentencing Court was in a unique position based on the nature of the motions that were filed: the State Sentencing Court retained jurisdiction of the Rule 35(a) motion after the Petition was filed with the State Supreme Court, and thus it was able to rule on the motion and moot the mandamus issue before a "triggering event" could occur. See Nulph, 333 F.3d at 1058. Thus, in this narrow case, the requirement of a "triggering event" does not logically apply. For these reasons, we conclude that the Pearce presumption of vindictiveness applies to this case.

c.

Having decided that the presumption applies, we must decide whether Appellant, in this instance, is entitled to § 2254 relief on the basis of the presumption. In Williams, we explained that in order to benefit from the presumption of vindictiveness, a petitioner must show (1) his second sentence is more severe than his original sentence, and (2) a reasonable likelihood of actual vindictiveness exists. See 444 F.3d at 254 (internal quotation marks omitted). If the petitioner makes these showings, "'a presumption arises that a greater sentence has been imposed for a vindictive purpose -- a presumption that

33

must be rebutted by objective information . . . justifying the increased sentence.'" Id. (quoting Smith, 490 U.S. at 798-99).

The parties do not dispute the first requirement. As to the second requirement, in deciding whether there is a reasonable likelihood of actual vindictiveness, we should determine if "the reasons for the court [imposing a higher sentence] 'affirmatively appear.'" Williams, 444 F.3d at 254 (quoting Smith, 490 U.S. at 798); see also United States v. Bello, 767 F.3d 1065, 1068 (4th Cir. 1985) ("Since Pearce, due process requires that where a judge sentences a defendant more severely after the defendant's successful appeal, a 'presumption of vindictiveness' is raised that may only be overcome by the sentencing judge's advancing appropriate reasons." (internal citation omitted)).

In an attempt to convince this court that the reasons for the higher sentence actually appear in the record, the State relies heavily on the State Sentencing Court's reasoning that it meant to "clarify" its original sentencing order. But this argument fails factually and legally. Factually, the record contradicts that conclusion. As explained supra, the State Sentencing Court clearly did not intend to sentence Appellant to a purely consecutive sentence for the escape conviction. And legally, this court has held, "Regardless of the sentencing judge's expressed intent, the increased severity of the later

34

sentence would create a reasonable apprehension of vindictiveness in defendants . . . that might well deter them from taking meritorious appeals." Bello, 767 F.2d at 1068.

If it were not enough that the State Sentencing Court provided no reason (or, worse still, a reason contradicted by the record) for the increased sentence, there are several other factors that, viewed together, demonstrate a reasonable likelihood of vindictiveness: (1) Appellant filed a motion to correct an illegal sentence with the State Sentencing Court; (2) Appellant filed the Petition; (3) the State Sentencing Court increased Appellant's sentence only four days after receiving a copy of the Petition; and (4) the State Sentencing Court specifically mentioned the Petition in the Amended Sentencing Order.

The State posits that there may have been two reasons why the State Sentencing Court issued the Amended Sentencing Order, which would defeat Appellant's claim that there was a reasonable likelihood of vindictiveness. These proffered reasons are, "the Amended Sentencing Order was needed to clarify [Appellant]'s sentence," and "the sentencing judge thought there was some merit to [Appellant]'s argument [and] an amendment was needed to correct [his] sentence." Appellee's Br. 17; see also id. at 31-32. However, aside from the State Sentencing Court's bare words in the Amended Sentencing Order, which the record

35

contradicts, there is no evidentiary support for either one of these assumptions. Therefore, Appellant is entitled to application of the presumption.

d.

In light of the foregoing analysis, the burden must shift to the State to rebut the presumption of vindictiveness, "which may be overcome only by objective information in the record justifying the increased sentence." Wasman, 468 U.S. at 565 (internal quotation marks omitted). In its appellate submissions, the State does not attempt to rebut any potential application of the presumption.[6] In such circumstances, Appellant is entitled to federal habeas relief.[7]

---

[6] At oral argument, the State explained that the State Sentencing Court "acknowledging that [it] had received the [Rule 35] motion and the petition for writ of mandamus," coupled with the unsettled state of the law in West Virginia regarding the original sentence, provides an "objective basis" for the increased sentence. Oral Argument at 37:25-38:40, Austin v. Plumley, No. 13-6661 (Jan. 28, 2014), available at http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. To the extent the State was proffering this argument in an attempt to rebut the presumption of vindictiveness, its attempt falls flat. Rather than presenting "objective information," Wasman, 468 U.S. at 565, the State requires us to speculate that the State Sentencing Court believed its initial sentence was illegal. That we cannot do.

[7] We emphasize that the Pearce presumption is a prophylactic measure meant to protect a defendant's due process rights, and our application thereof is not at all a commentary on the propriety of the State Sentencing Court. As such, our ruling does not evince a finding of actual vindictiveness. See Blackledge, 417 U.S. at 28 ("The rationale of our judgment in (Continued)

36

3.

We turn now to the proper remedy. If a § 2254 petitioner is entitled to habeas relief, the court should "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Appellant asks us to remand with instructions to reinstate his initial sentence -- an interesting proposition, considering it was Appellant's challenge to that initial sentence as illegal under West Virginia law that was the impetus to this appeal in the first place.[8] The State, on the other hand, asks us to direct the district court to issue a conditional writ requiring resentencing of Appellant within a

the Pearce case . . . was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." (internal quotation marks omitted)).

[8] The State has taken conflicting positions on whether the delayed effective sentencing date of the original sentence contravenes West Virginia law. Compare Austin, No. 1:11-cv-892, ECF No. 28 (Resp't's Mot. Summ. J.) at 19 ("In the case-at-bar the Petitioner claims, wrongfully, that the trial court's first sentence was illegal." (emphasis supplied)), with Appellee's Br. 33 ("By [delaying the effective sentencing date to March 2010], the [State Sentencing Court] effectively made Austin's sentence a 1.5 to 3 year term, arguably in contravention of West Virginia Code § 61-11-8." (emphasis supplied)), and Oral Argument at 23:04-24:00, Austin, No. 13-6661 (State explaining that there has been no controlling decision from the Supreme Court of Appeals of West Virginia on this point). In any event, we are not called upon to decide this issue of West Virginia law.

certain period of time, and mandating that the sentencing be conducted before a different judge.

We agree a conditional writ is appropriate. See Madej v. Briley, 371 F.3d 898, 900 (7th Cir. 2004) ("When the constitutional error is curable, the court often issues a conditional writ[.]"). We will not, however, intrude on the state court's dominion and dictate that a different sentencing judge should preside over this matter.

We observe, however, that Appellant's challenge to the legality of his original sentence was never resolved. In the interests of justice, Appellant is entitled to have this question resolved in state court, particularly since the State has taken conflicting positions on whether the original sentence was illegal. Thus, we vacate the judgment of the district court and remand for issuance of a conditional writ of habeas corpus, requiring the Amended Sentencing Order to be vacated. See Milliken v. Bradley, 418 U.S. 717, 746 (1974) ("[A]ll remedies are [designed] to restore the victims of [constitutional wrongs] to the position they would have occupied in the absence of such conduct."); Rushen v. Spain, 464 U.S. 114, 119-20 (1983) ("The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred."). Appellant's original sentence should thus be reinstated, and his Rule 35(a) motion should be resolved in accordance with the law

of West Virginia and the Due Process Clause of the Constitution. If the motion is not resolved within a reasonable time, Appellant's sentence on the attempted escape conviction should be rescinded.

## IV.

For the foregoing reasons, the judgment of the district court is vacated, and this matter is remanded to the district court for the issuance of the conditional writ of habeas corpus explained above.

VACATED AND REMANDED

SHEDD, Circuit Judge, dissenting:

I agree with the district court that "[i]n this case, nothing occurred to trigger the presumption of vindictiveness," because "there was no reversal or similar event 'prod[ding] the sentencing court into a posture of self-vindication.'" Austin v. Plumley, No. 1:11–0892, 2013 WL 1336997, at *5 (S.D. W.Va. March 29, 2013) (quoting Kindred v. Spears, 894 F.2d 1477, 1480 (5th Cir. 1990)). Accordingly, I would affirm the district court's denial of Austin's 28 U.S.C. § 2254 petition.